IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSHUA SOMOGYI and KELLY WHYLE SOMOGYI, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>     v.<br><br>FREEDOM MORTGAGE CORPORATION,<br><br>              Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>     Civil Action No.<br>     17-6546 (JBS/JS)<br><br><br>          **OPINION** |

APPEARANCES:

Eric Lechtzin, Esq.
Arthur Stock, Esq. (<u>pro</u> <u>hac</u> <u>vice</u>)
Lawrence J. Lederer, Esq. (<u>pro</u> <u>hac</u> <u>vice</u>)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
     -and-
Brian H. Mahany, Esq. (<u>pro</u> <u>hac</u> <u>vice</u>)
Timothy J. Granitz, Esq. (<u>pro</u> <u>hac</u> <u>vice</u>)
MAHANY LAW
8112 West Bluemound Road, Suite 101
Wauwatosa, WI 53213
     Attorneys for Plaintiffs

Meredith C. Slawe, Esq.
Michael W. McTigue, Jr., Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 Market Street, Suite 4100
Philadelphia, PA 19103
     -and-
Katie Bailey Garayoa, Esq.
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
     Attorneys for Defendant

**SIMANDLE**, District Judge:

## I.    Introduction

Plaintiffs Joshua Somogyi ("Mr. Somoygi") and Kelly Whyle Somogyi ("Mrs. Somoygi," and collectively, "Plaintiffs") filed this putative class action on behalf of themselves and all others similarly situated against Defendant Freedom Mortgage Corporation ("FMC" or "Defendant"). In this matter, Plaintiffs generally allege that FMC violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 <u>et seq.</u>, by using an automatic telephone dialing system ("ATDS") and/or prerecorded voices to place unsolicited telemarketing calls to consumers without their prior express written consent and continuing to place those calls after Plaintiffs and other class members requested that the calls stop. [Docket Item 19.]

Pending before the Court is Defendant's motion to dismiss the Amended Complaint or, in the alternative, to stay the case pending new guidance from the Federal Communications Commission ("FCC") following the D.C. Circuit's ruling in <u>ACA Int'l v. Fed. Commc'n Comm'n</u>, 885 F.3d 687 (D.C. Cir. 2018) (hereinafter, "<u>ACA International</u>"), which invalidated portions of the FCC's 2015 definition of an ATDS. [Docket Item 26.] Plaintiffs filed a brief in opposition [Docket Item 28], and Defendant filed a reply. [Docket Items 32.] With leave of Court [Docket Item 35], both parties filed supplemental briefs addressing the impact of

<u>ACA International</u> on the pending motion to dismiss. [Docket
Items 36, 37.] The Court heard oral argument on July 19, 2018.

The principal issues before the Court are whether
Plaintiffs plausibly allege the following: (1) FMC improperly
contacted Mr. Somogyi using an ATDS on his cellular telephone;
(2) FMC impermissibly used a prerecorded or artificial voice to
contact their residential telephone line; and (3) FMC failed to
comply with Plaintiffs' do-not-call requests. For the reasons
that follow, the Court finds that, accepting the allegations in
the Amended Complaint as true, Plaintiffs have plausibly alleged
that FMC improperly contacted Mr. Somogyi's cellular phone using
an ATDS, that FMC used a prerecorded or artificial voice to
contact Plaintiffs' residential telephone line, and that
Plaintiffs asked FMC to stop calling them on both lines at issue
and FMC ignored their requests. The Court further finds, as
explained in Part IV.A, below, that a stay is not prudent at
this time because, at a minimum, discovery of the nature of
FMC's calling system and FMC's contacts with Plaintiffs is
required before any definitive legal standard under the TCPA can
be applied to FMC's conduct herein. Accordingly, the Court will
deny Defendant's motion to dismiss and deny FMC's request for a
temporary stay.[1]

_____

[1] This Court has today also addressed a motion to dismiss and
alternatively for a temporary stay in a related case, <u>Sieleman</u>

## II.  Background

Mr. and Mrs. Somogyi, both citizens of Pennsylvania, acquired a mortgage from FMC in 2012. [Docket Item 1 at ¶¶ 5, 21.] FMC is a Delaware corporation headquartered in Mt. Laurel, New Jersey. [Id. at ¶ 6.] Plaintiffs allege that FMC called their residential line "beginning in 2014 or 2015 through August 8, 2017," and Mr. Somogyi alleges FMC called his cellular phone "multiple times between 2014 and 2016." [Id. at ¶ 23.]

Plaintiffs aver that FMC placed the calls to Mr. Somogyi's cellular phone using an ATDS,[2] which was "marketed by Genesys Telecommunications Laboratory (formerly Interaction Intelligence Group, Inc.), called The I3 client within the Interactive Scripter software suite." [Id. at ¶ 17.] According to the Amended Complaint, the ATDS was used by FMC employees in the following manner:

_____

v. Freedom Mortgage Corp., Civil No. 17-13110 (JBS/JS) (D.N.J., opinion filed August 2, 2018).

[2] The TCPA defines an ATDS as "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). As recently explained by the Second Circuit, the statutory definition of an ATDS "does not include every smartphone or computer that might be turned into an autodialer if properly reprogrammed, but does include devices whose autodialing features can be activated, as the D.C. Circuit suggested, by the equivalent of 'the simple flipping of a switch.'" King v. Time Warner Cable Inc., 894 F.3d 473, 481 (2d Cir. 2018) (citing ACA International, 885 F.3d 687, 696 (D.C. Cir. 2018)).

[A] Freedom Mortgage employee would press a single button
on a computer keyboard screen, which would cause the
software to choose a telephone number to be called, put
information on the caller's screen such as the name and
address of the individual being called, and dial the ten
digit number without further human intervention. The
software, not the caller, decided who would be called next.

[Id.] Plaintiffs base these claims, in part, on interviews
conducted by and through their counsel with two former
supervisory employees of FMC who worked at one of FMC's six call
centers. [Id. at ¶¶ 12, 13.]

Plaintiffs further allege that FMC used a "ringless
voicemail" system to deliver "prerecorded message[s]" to
customers, and that FMC used a prerecorded voice to leave a
message on their residential telephone line on August 8, 2017.
[Id. ¶¶ 18, 23.] According to the Amended Complaint, the
"clarity and cadence, and the absence of anything specific such
as the name of the person being called" indicated the message
FMC left Plaintiffs "was prerecorded." [Id. at ¶¶ 12, 13, 23.]

Finally, Plaintiffs allege that, "[o]n each telephone
number, the Plaintiffs orally requested in the first calls that
they answered, and on additional calls subsequently, that
further calls cease." [Id. at ¶ 25.] Despite these requests,
Plaintiffs contend, "Defendant continued to call." [Id.]
Plaintiffs aver that "managers at Freedom Mortgage call centers
were instructed to, and did, delete the 'do not call'
entries[,]" meaning "customers who had requested they not be

5

called, would be called again, sometimes as soon as the next day." [Id. at ¶ 15.]

In sum, Plaintiffs allege the calls made by FMC to Plaintiffs' residential line and to Mr. Somogyi's cellular phone constitute violations of the TCPA under 47 U.S.C. §§ 227(b)(1)(A)(iii) and 227(b)(1)(B). [Id. at ¶¶ 51, 52.] Plaintiffs also assert that FMC's failure to honor their do-not-call requests, and the requests of other proposed class members, amounts to a violation of 47 U.S.C. § 227(c)(1)(a), 47 C.F.R. § 64.1200(d), and 16 C.F.R. § 310.4(b)(I)(iii). As relief, Plaintiffs seek an Order certifying this case as a class action, actual and statutory damages, including treble damages for willful and/or wanton violations, injunctive relief, pre- and post-judgment interest on monetary relief, and reasonable attorneys' fees. [Id. at a, c-h.]

**III. Standard of Review**

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of

his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, while disregarding unsupported conclusory statements, a court concludes that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

## IV. Discussion

FMC argues that the Amended Complaint should be dismissed for four reasons. First, with regard to the alleged calls to Mr. Somogyi's cellular phone (as opposed to Plaintiffs' residential line), FMC argues that the Plaintiffs' description of the specific dialing equipment allegedly used by FMC does not qualify as an ATDS because an "employee . . . press[ing] a

7

single button" constitutes "human intervention," and therefore, the "alleged dialing system does not operate automatically." [Docket Item 37 at 3, 4] (emphasis in original). Second, according to FMC, Plaintiffs "fail to plausibly allege that Freedom Mortgage contacted [Mr. Somogyi on his cellular phone] using a 'random or sequential number generator'" because "[the Somogyis] were called not randomly but specifically because they were customers of Freedom Mortgage." [Id. at 4.] Third, FMC argues Plaintiffs have failed to plausibly allege that a prerecorded or artificial voice was used to call their residential line because "Plaintiffs offer only vague allegations regarding a single voicemail[,]" failed to allege the contents of the message,[3] and do not explain "why the absence of names or the clarity or cadence of the message shows that the voice was prerecorded." [Docket Item 26 at 16-17.] Fourth, FMC argues "Plaintiffs fail to allege sufficient facts regarding their do not call requests." [Id. at 2, 8, 11.] Alternatively, FMC requests a stay pending FCC guidance. [Docket Item 37 at 5.] The Court now turns to the stay request and each argument in turn.

---

[3] Contrary to FMC's argument, Plaintiffs have alleged that "[a]ll of the[] calls were for the purpose of marketing products and/or services, in each case, mortgage refinancing." [Docket Item 19 at ¶ 24.]

## A.  Stay Pending FCC Guidance

Initially, FMC requested a stay of this litigation pending the D.C. Circuit's decision in a case involving the FCC's interpretation of an ATDS, among other things. [Docket Item 26 at 23-29.] Before the Court decided FMC's stay request, the D.C. Circuit issued its decision in that case, <u>ACA Int'l v. Fed. Commc'n Comm'n</u>, 885 F.3d 687 (D.C. Cir. 2018). FMC subsequently modified its stay request, asking that the Court stay the case pending further guidance from the FCC regarding what constitutes an ATDS following <u>ACA International</u>. [Docket Item 37 at 8-9.] Two months later, the FCC issued a Public Notice seeking comment on a variety of issues stemming from the D.C. Circuit's decision. At oral argument, counsel for FMC posited that the forthcoming FCC Order could be dispositive and might be promulgated by the beginning of 2019, and that the case should be temporarily stayed until then. For the reasons discussed below, FMC's request for a stay will be denied at this time.

In <u>ACA International</u>, the D.C. Circuit Court of Appeals heard a consolidated challenge from several regulated entities seeking, in part, a review of a 2015 FCC Order that adopted an expansive view of what qualified as an ATDS. 885 F.3d at 691 (interpreting <u>In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991</u> ("2015 FCC Order"), 30 F.C.C. Rcd. 7961, 7974 § 16 (June 18, 2015) ("[T]he capacity of an autodialer is not

limited to its current configuration but also includes its potential functionalities.")). Because the breadth of the FCC's 2015 definition would render smartphones ATDSs, something Congress clearly did not intend when enacting the TCPA, the D.C. Circuit invalidated the FCC's 2015 description of what qualifies as an ATDS. 885 F.3d at 700. The D.C. Circuit went further and criticized portions of an FCC Report and Order from 2003 as conflicting with the TCPA's statutory definition of an ATDS. Id. at 702-03. As the Third Circuit recently observed, however, FCC Orders issued prior to 2015 appear to have survived whatever criticism was levied by the D.C. Circuit. See Dominguez v. Yahoo, Inc., 894 F.3d 116 (3d Cir. June 26, 2018).[4]

Following ACA International, the FCC on May 14, 2018 issued a Public Notice seeking comment, as relevant here, "on the functions a device must be able to perform to qualify as an automatic telephone dialing system." [Docket Item 43, Ex. B at 2.] Two specific terms in the TCPA definition of an ATDS are at issue. **First**, the FCC seeks comment on what the term "automatic" means. [Id.] The FCC has stated that the "'basic function' of an

---

[4] In Dominguez, the Third Circuit addressed the scope of the ACA International opinion for the first time. Though the majority of the analysis focused on "the present capacity question," the Court indicated that the 2003 FCC Order was not overruled: "In light of the D.C. Circuit's holding, we interpret the statutory definition of an autodialer as we did prior to the issuance of the 2015 [FCC Order]." Dominguez, 894 F.2d at 119.

automatic telephone dialing system is to 'dial numbers without human intervention'" but failed to clarify whether this is a necessary condition for a dialing system to qualify as an ATDS. [Id.] The FCC also declared that another "basic function" of an ATDS "was to 'dial thousands of numbers in a short period of time[.]'" [Id.] The question then becomes "[h]ow 'automatic' must dialing be for equipment to qualify as an (ATDS)?" [Id.] **Second**, the FCC seeks comment on the "random or sequential number generator" language. [Id.] Specifically, since the FCC seems to offer conflicting views: that "random or sequential number generation" is a necessary component of an ATDS, and that dialing equipment can still qualify "even if it lacks that capacity[,]" the question becomes "'which is it?'" [Id.]

It is well-settled that, "[i]n the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." Bechtel Corp. v. Local 215, Laborers' Intern. Union of North America, 544 F.2d 1207, 1215 (3d Cir. 1976). As the Supreme Court stated in Landis v. North American Co., 299 U.S. 248, 254 (1936), "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Among the factors that courts take into account when

11

assessing the suitability of issuing a stay are "whether a stay will simplify issues and promote judicial economy, the balance of harm to the parties, and the length of the . . . stay." Glades Pharmaceuticals, LLC v. Call, Inc., No. Civ. A. 04-4259, 2005 U.S. Dist. LEXIS 3696, at *8 (E.D. Pa. Mar. 9, 2005) (internal quotations omitted).

Since the statutory definition of an ATDS (as opposed to the FCC's interpretation of an ATDS) was not questioned in either ACA International or Dominguez, the Court finds it is unnecessary to issue a stay at the present time. Whatever guidance the FCC may issue in the future will not alter the statutory definition of an ATDS. In other words, telephone dialing equipment that "has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator" qualifies as an ATDS today, just as it will following any future FCC guidance. For purposes of the instant motion, whether Plaintiffs have plausibly alleged FMC contacted them using telephone dialing equipment that falls within the TCPA's statutory definition of an ATDS may be determined by applying the statute and previous FCC guidance that was not changed by ACA International. It is therefore doubtful that any new guidance issued by the FCC will be dispositive, or even simplify the issues, for purposes of

deciding the present motion to dismiss.[5] Further, the FCC's

reconsideration of its ATDS definition will not be relevant to

Plaintiffs' claim of violating the do-not-call requirements, see

Part IV.D below, because such calls need not be automated to

violate the regulations.

For these reasons, FMC's request for stay shall be denied.

**B.    Automatic Telephone Dialing System (ATDS) Calls to Cellular Phones**

Congress enacted the TCPA "to protect individual consumers

from receiving intrusive and unwanted calls." Daubert v. NRA

Group, LLC, 861 F.3d 382, 389 (3d Cir. 2017) (quoting Gager v.

Dell Fin. Servs., LLC, 727 F.3d 265, 268 (3d Cir. 2013)).

Accordingly, the TCPA provides, inter alia, that "any call

(other than a call made for emergency purposes or made with the

prior express consent of the called party) using any [ATDS] . .

. to any telephone number assigned to a . . . cellular telephone

---

[5] Moreover, as explained below, factual discovery is necessary to
determine whether the particular systems and procedures alleged
by Plaintiffs, which lie within the literal statutory definition
of an ATDS, were actually employed by FMC. Permitting discovery
is also consistent with the Second Circuit's recent analysis of
the ACA International decision, in which the Second Circuit held
that the actual capabilities of the alleged dialing equipment
must be determined with specificity on a case-by-case basis.
King, 894 F.3d at 481 ("[C]ourts may need to investigate, on a
case-by-case basis, how much is needed to activate a device's
autodialing potential in order to determine whether it violates
the TCPA."). At the conclusion of discovery, if appropriate, FMC
may renew its motion for a stay if the FCC has not issued its
new order or regulations in response to ACA International.

service" is a violation of the Act and the receiver of the call(s) may be entitled to injunctive relief and statutory damages. 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(3).

To prove a violation of the TCPA for calls made to cellular phones, a plaintiff must show that: "(1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent." Martinez v. TD Bank USA, No. 15-7712 (JBS/AMD), 2017 U.S. Dist. LEXIS 101979, at *9-10 (D.N.J. 2017) (citations omitted). The TCPA defines an "ATDS" as "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The TCPA, however, also vests the FCC with the authority to "prescribe regulations to implement the requirements" of the Act. Id. § 227(b)(2). Pursuant to that authority, the FCC in 2003 issued a Report and Order finding that "predictive dialers"[6] qualify as "automatic telephone dialing equipment" under the TCPA. 2003 FCC Order, 18 F.C.C. Rcd. 14014, 14091-94 ¶¶ 131-134 (Jul. 3, 2003). The 2003 FCC Order further found that despite technological advances, "[t]he

---

[6] The 2003 FCC Order defined a "predictive dialer" as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call." 2003 FCC Order, 18 F.C.C. Rcd. at 14022 ¶ 8 n.31 (Jul. 3, 2003).

basic function of [ATDSs], however, has not changed," and is
still "the capacity to dial numbers without human intervention."
Id. at ¶ 132; see also In the Matter of Rules & Regulations
Implementing the Tel. Consumer Prot. Act of 1991, ("2008 FCC
Order") 23 F.C.C. Rcd. 559, 566 ¶¶ 12-13 (Jan. 4, 2008)
(affirming the 2003 FCC Order "that the basic function of
(ATDSs)" is still "the capacity to dial numbers without human
intervention" and that "predictive dialer[s] fall[] within the
meaning and definition of autodialer and the intent of
Congress."). The 2003 Order remains effective guidance,
according to the Third Circuit in Dominguez, 893 F.2d at 119.

### 1.   Predictive Dialers

Plaintiffs allege in their Amended Complaint that the
dialing system used by FMC qualifies as an ATDS because "a
Freedom Mortgage employee would press a single button on a
computer keyboard screen, which would cause the software to
choose a telephone number to be called, . . . and dial the ten-
digit number without further human intervention. The software,
not the caller, decided who would be called next." [Docket Item
19 at 5, ¶ 17.] FMC argues that the Plaintiffs' description of
the specific dialing equipment allegedly used by FMC does not
qualify as an ATDS because an "employee would press a single
button" constituting "human intervention," and therefore, the

"alleged dialing system does <u>not</u> operate automatically." [Docket Item 37 at 3, 4.]

Some courts have held that the relevant inquiry in determining whether a "predictive dialer" qualifies as an ATDS under the TCPA "is whether human intervention is required at the point in time at which the number is dialed." <u>Strauss v. CBE Group, Inc.</u>, 173 F. Supp. 3d 1302, 1309 (S.D. Fla. 2016) (citations omitted); <u>see also</u> <u>Morse v. Allied Interstate, LLC</u>, 65 F. Supp. 3d 407, 410 (M.D. Pa. 2014) (holding that the relevant inquiry of the human intervention test is whether "there is human intervention at the time a call is made/placed or when a number is actually dialed").

Accordingly, courts have consistently held that dialing systems where all calls are initiated manually do not qualify as ATDSs. <u>See</u> <u>Schlusselberg v. Receivables Performance Mgmt., LLC</u>, No. 15-7572(FLW), 2017 U.S. Dist. LEXIS 100710, at *8 (D.N.J. June 29, 2017) (holding that defendant's dialing system did not qualify as an ATDS where "a clicker agent manually initiates a call at will and determines the frequency of the calls, not through any automatic means."); <u>Pozo v. Stellar Recovery Collection Agency, Inc.</u>, No. 8:15-cv-929-T-AEP, 2016 U.S. Dist. LEXIS 146432, at *11 (M.D. Fla. Sep. 2, 2016) (holding that defendant's dialing system did not qualify as an ATDS where "clicker agent[s]" decide "when to initiate a call" and "[m]ost

16

importantly, [defendant's dialing system] does not allow any calls to be made without . . . clicking the dialogue box to initiate the call.").

Here, unlike the authorities cited, Plaintiffs do not allege that an FMC employee had to click a button to initiate each call made. Rather, Plaintiffs allege an FMC employee need only press one button on a computer screen, at which point the dialing system chooses who to call, dials the number, and then "[t]he software, not the caller, decide[s] who [to] call next." [Docket Item 19 at ¶ 17.] At this stage, Plaintiff's allegation satisfies the human intervention test because the human intervention that occurred, if any, took place before the number was actually selected or dialed by operation of the algorithm. Cf. Strauss, 173 F. Supp. 3d at 1309; Morse, 65 F. Supp. 3d at 410.

### 2. Random or Sequential Number Generation

FMC next argues that Plaintiffs "fail to plausibly allege that Freedom Mortgage contacted them using a 'random or sequential number generator'" since "they were called not randomly but specifically because they were customers of Freedom Mortgage." [Docket Item 37 at 4.]

In support, FMC cites Trumper v. G.E. Capital Retail Bank, 79 F. Supp. 3d 511 (D.N.J. 2014). Though the court in Trumper said that since the calls were directed at a specific individual

it "appear[ed] that the calls were not random[,]" id. at 513, the decision does not stand for the proposition that it is impossible for companies to contact their customers using an ATDS in violation of the TCPA. Rather, the Trumper Court relied heavily on other deficiencies in the plaintiff's amended complaint to dismiss the case. See Trumper 79 F. Supp. 3d 511, at 513 (dismissing plaintiff's amended complaint when it "says nothing about the calls (plaintiff) received," and "provides no factual allegations suggesting that the voice on the other end of the line was prerecorded.").

Here, conversely, Plaintiffs have made sufficient factual allegations, taken as true, to infer FMC used an ATDS. As previously discussed, Plaintiffs have alleged the following: that all the calls they received "were for the purpose of marketing . . . mortgage refinancing[]"; that FMC used a specific "dialing software system," the name of the system and the company that markets it, how FMC operated the system, and that the system "effectively acted like a random number dialer[]"; that FMC "has six call centers employing about 300 loan officers who were engaged in telemarketing of refinance opportunities"; and that FMC called Mr. Somogyi's cellular phone

"multiple times" offering refinancing "between 2014 and 2016."
[Docket Item 19 ¶¶ 12, 17, 23.][7]

Defendant has further argued that the numbers called are not "random" as required for an ATDS because all the numbers preloaded in the calling system belong to FMC customers, rather than the public at large. If, as Plaintiffs allege, FMC's system selected the next number from among a population of hundreds of thousands of numbers belonging to existing customers, the selection of the next call is what matters, and it is random. A calling system is no less random if the machine's universe is the hundreds of thousands of customers, or the residents of a state, or the residents of a nation. Otherwise, the logic of Defendant's position would lead to the conclusion that a system containing fewer than all the telephones in the world is a pre-selected, limited universe, and therefore not "random." Congress could not intend such an absurd result.

For the foregoing reasons, the Amended Complaint alleges sufficient information which, if true, could establish that FMC used an ATDS to call Mr. Somogyi's cell phone. The Court, therefore, finds that Plaintiff has adequately pleaded the ATDS element under the TCPA.

---

[7] Furthermore, at oral argument counsel did not dispute that FMC has about 1 million outstanding mortgages and that these customers are solicited for refinancing their FMC mortgages.

**C.    Prerecorded or Artificial Voice Calls to Residential Line**

The TCPA makes it unlawful, with limited exceptions, "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party[.]" 47 U.S.C. § 227(b)(1)(B).

Plaintiffs allege that FMC used a "prerecorded voice" to call "their residential line beginning in 2014 or 2015 through August 8, 2017[.]" [Docket Item 19 ¶¶ 23, 52.] To support their allegation, Plaintiffs contend that the call allegedly placed on August 8, 2017, "left a message using a voice that, based on its clarity and cadence, and the absence of anything specific such as the name of the person being called, was prerecorded." [Id. at ¶ 23] FMC argues the alleged calls to Plaintiffs' residential line are deficient because "Plaintiffs offer only vague allegations regarding a single voicemail[,]" failing to allege the contents of the message(footnote about all calls offering refinancing), or "why the absence of names or the clarity or cadence of the message shows that the voice was prerecorded." [Docket Item 26 at 16-17.]

The Court finds that Plaintiffs have alleged sufficient facts in their Amended Complaint, when taken as true, to allow a reasonable inference that FMC used an artificial or prerecorded

voice to contact them on their residential landline. Though
Plaintiffs do not elaborate on what about the clarity or cadence
of the voice on the message indicate it was left with a
prerecorded or artificial voice, they need not offer "[d]etailed
factual allegations" so long as the Amended Complaint offers
enough "factual enhancement[s]" to cross the line "between
possibility and plausibility of 'entitlement to relief.'"
Twombly, 550 U.S. at 555, 557. While Plaintiffs could have
offered more, see Gesten v. Stewart Law Group, LLC, 67 F. Supp.
3d 1356, 1358 (S.D. Fla. 2014) (denying motion to dismiss where
plaintiff alleged messages left by defendant "featured a
disjointed cadence and a timbre which suggested they were
created with an artificially produced voice")(emphasis added),
the Amended Complaint alleges that FMC's message was prerecorded
"based on its clarity and cadence, and the absence of anything
specific such as the name of the person being called," [Docket
Item 19 ¶ 23.] At this stage, this is sufficient to raise a
reasonable inference that FMC used a prerecorded or artificial
voice to deliver the message to Plaintiffs.

> ### D.   Do-Not-Call List Violations

To comply with the TCPA's restrictions, the FCC has
determined that companies making "telemarketing calls" to
cellular or residential lines must "institute[] procedures for
maintaining a list of persons who request not to receive

telemarketing calls[.]" 47 C.F.R. §§ 64.1200(d), (e). Failure to honor such do-not-call requests "within a reasonable time from the date such request is made[,]" not exceeding thirty days, is a violation of the TCPA. Id. at (d)(3); see also In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991 ("1992 FCC Order"), 7 F.C.C. Rcd. 8752, 8753 ("Each person or entity making a telephone solicitation, or on whose behalf a telephone solicitation is made, will be held responsible for maintenance of its do-not-call list and will be fully accountable for any problems arising in the maintenance and accuracy of the list.")

FMC argues that Plaintiffs have failed to plead "sufficient facts regarding their do not call requests, including[:] (i) the dates of the calls . . .; (ii) the manner in which they supposedly 'opted-out' . . .; and (iii) how many calls (FMC) placed to Plaintiffs on each" telephone line after the do-not-call requests were allegedly made. [Docket Item 26 at 8-9.]

At this stage, Plaintiffs have pleaded sufficient factual allegations to raise a reasonable inference that FMC failed to follow the internal do-not-call list requirement mandated by the FCC under the TCPA. The Amended Complaint alleges that Plaintiffs "orally requested in the first calls that they answered, and on additional calls subsequently, that further calls cease." [Docket Item 19 at ¶ 25.] Further, "[i]n mid-2016, Mrs. Somogyi placed a call to Freedom Mortgage to request that

22

calls cease." [Id.] According to Plaintiffs, despite their requests to stop, the calls continued. [Id. at ¶¶ 25-26.] Finally, Plaintiffs allege FMC instructed managers to "delete the 'do not call' entries" made by the employees making the calls "after telephone calling had ended for the day." [Id. at ¶ 15.]

Contrary to FMC's argument, Plaintiffs have alleged the specific manner in which they requested that FMC stop placing calls -- verbally, over the phone. [Docket Item 19 at ¶ 25.] Significantly too, Plaintiffs made detailed factual allegations about how FMC allegedly failed to comply with the internal do-not-call list requirement. [Id. at ¶ 15.] Therefore, Plaintiffs have sufficiently pleaded that FMC allegedly violated the internal do-not-call restrictions of the TCPA.

## V.    Conclusion

In sum, Plaintiffs have included enough factual allegations, taken as true, to present a plausible basis to infer that: (1) FMC violated 47 U.S.C. § 227(b)(1)(A)(iii) by placing "telemarketing calls" to Mr. Somogyi's cell phone, without his prior express written consent, using an ATDS; (2) FMC violated 47 U.S.C. § 227(b)(1)(B) by placing at least one call to Plaintiffs' residential line, without prior express consent and not for an exempted purpose, using "an artificial or prerecorded voice"; and (3) FMC violated 47 U.S.C. §

227(c)(1)(a) and 47 C.F.R. §§ 64.1200(d)&(e) by failing to comply with the FCC's internal do-not-call requirements.

For the foregoing reasons, the Court finds that Plaintiff has alleged sufficient facts to plausibly state a claim under the TCPA. Defendant's motion to dismiss is therefore denied, and FMC's application for a temporary stay pending FCC guidance post-ACA International will be denied so that appropriate discovery may proceed. The accompanying Order will be entered.


**August 2, 2018**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            U.S. District Judge