IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

JOSHUA SOMOGYI, et al.,

                    Plaintiffs,

          v.                            Civil No. 17-6546 (RMB/JS)

FREEDOM MORTGAGE CORP.,

                    Defendant.

### AMENDED OPINION

     This Opinion addresses the nationwide class action settlement of plaintiffs' claims under the "Telephone Consumer Protection Act" ("TCPA"), 47 U.S.C. $227, et. seq. Plaintiffs seek approval to certify a class of approximately 1.5 million people who received defendant's alleged unsolicited sales calls. If approved 79,330 participating class members will each receive $75.30.

     This matter is before the Court on plaintiffs' "Motion for Final Approval of Class Action Settlement" [Doc. No. 101].[1] After the final fairness hearing was held on September 10, 2020, and in order to expedite the distribution to the class, the Court entered its Order approving the parties' settlement. [Doc. No. 112]. This Opinion further explains the Court's reasoning for granting plaintiffs' motion.[2]

_____

[1] The parties consented to the jurisdiction of this Court to decide this motion. [Doc. No. 88].
[2] Plaintiffs' motion is supported by the Declarations ("Decl.") of David M.

**BACKGROUND**

Joshua and Kelly Somogyi ("Somogyi") filed this lawsuit on August 30, 2017. On December 14, 2017, Stewart Sieleman ("Sieleman") filed a related case (C.A. No. 17-13110 (JBS/JS)). On August 9, 2018, the cases were consolidated for discovery and case management purposes [Doc. No. 51]. The cases were later consolidated for all purposes following which the Sieleman action was dismissed.

Plaintiffs allege that beginning in 2013, Freedom Mortgage Corp. ("FMC") made unsolicited phone calls to plaintiffs' residential and cellular phones using an automated telephone dialing system ("ATDS") without their prior written consent in violation of the TCPA. Plaintiffs allege FMC placed calls even after its customers requested the calls stop. Plaintiffs also allege FMC's managers deleted certain "do-not-call" requests from its computers so that their customers could be called again. Plaintiffs contend FMC's actions were willful and/or knowing violations of the TCPA, and they seek actual and statutory damages, treble damages, and other relief. Defendants deny all liability allegations and do not concede that any member of the class was

---

Kaufman (Doc. No. 101-13), Lawrence J. Lederer, Esquire [Doc. Nos. 101-3, 101-8], Brian Mahany, Esquire [Doc. No. 101-5], Stefan Coleman, Esquire [Doc. No. 101-6], Professor Jacob H. Russell [Doc. No. 101-9], Joshua Somogyi [Doc. No. 101-10], Kelly Whyle Somogyi [Doc. No. 101-11], and Stewart Sieleman [Doc. No. 101-12]. Lederer[Doc. No. 106-1] and Kaufman [Do . No. 106-2] also submitted Supplemental Declarations ("Supp. Decl.").

called by FMC or its vendor in violation of the TCPA or otherwise.

The case has been vigorously litigated.  FMC filed motions to dismiss in Somogyi and Sieleman which were denied.  Somogyi, 2018 WL 3656158 (D.N.J. August 2, 2018); Sieleman, 2018 WL 3656159 (D.N.J. Aug. 2, 2018).  Thereafter the parties engaged in extensive discovery involving numerous interviews, depositions, interrogatories, and document productions from defendants and non-parties.  In early 2019, the parties agreed to mediate the matter and held three mediation session with a retired United States Magistrate Judge.  Afterwards, the parties continued their discussions and reached an agreement in principal to settle in May 2019.  The parties entered into their Settlement Agreement on July 31, 2019.  The Court preliminarily approved the settlement in an Order entered on February 24, 2020. [Doc. No. 96].

The preliminary and final certified class is defined as follows:

> All portfolio clients of FMC in the United States whose mortgages FMC serviced and who, during the Class Period September 1, 2013 through July 22, 2019, received one or more calls or voicemails made by or on behalf of FMC to any one or more of the client's cellular, voice over internet protocol (VOIP), residential, or landline phone numbers.  For purposes of the Settlement Class, FMC's "clients" means borrowers and co-borrowers, spouses, and successors-in-interest, who shall collectively be deemed one client. Excluded from the Settlement Class are (1) FMC; (ii) any affiliates of FMC; (iii) any employee of FMC or members of their Immediate Family; (iv) Plaintiffs' Counsel; (v) the Judges who have presided

over the Action; (vi) those persons who file a timely and valid request to be excluded from the Settlement Class; and (vii) the legal representatives, heirs, successors and assigns of any excluded person or entity.

Insofar as the settlement terms are concerned, they are set forth in the parties' Settlement Agreement which includes monetary and non-monetary terms.[3]  Regarding money, the settlement provides that FMC will pay $9.5 million into a non-reversionary account maintained by the designated Escrow Agents.  From this sum, plaintiffs propose an attorney fee of $3 million and a cost reimbursement of $61,198.75.  In addition, the claims administrator, Heffler Claims Group, will be paid $450,000.00. Plaintiffs also propose that the three (3) named plaintiffs be paid a total of $15,000 or an incentive award of $5,000 each.  The settlement sum to be distributed will be paid pro rata to all qualifying persons.  To claim an award, a class member was simply required to mail in a claim form indicating that he/she was called by FMC.

The putative class consists of 1,523,970 members after eliminating duplicative addresses and requests for exclusion.  See Supp. Kaufman Decl. ¶6.  In total, 79,330 Proof of Claim forms were returned.  Id. ¶8.  Heffler only received twenty-four (24)

---

[3] The Settlement Agreement is part of the record. See Doc. No. 89-4.

4

requests for exclusion.  See generally Heffler Decl.[4]  When the Court entered its Preliminary Approval Order it was estimated there would be a 10% claims rate resulting in a payment of approximately $37.61 per claim.  See Doc. No. 96 at 12, 14.  However, now that actual numbers exist, the present per claim estimated payment is $75.30.

As noted, the settlement includes non-monetary relief including:

(1) The designation of a senior manager responsible for assuring FMC's compliance with the TCPA who will report to the office of the CEO;

(2) Additional training regarding the TCPA's do-not-call lists; and

(3) Establishing, maintaining, and implementing procedures to facilitate TCPA compliance regarding do not call policies and lists.  See generally Settlement Agreement §3.1.

**DISCUSSION**

The Court will first address whether final class certification should be granted and then turn to the fairness of the settlement.

1. Class Certification

Every class action must satisfy the requirements of Rule 23(a)

---

[4] Arguably, there were two objections to the settlement.  However, these individuals voiced only general objections and did not object to any specific settlement term, requested fee or costs, or service award.  See Letters at Doc Nos. 103, 105.

and the requirements of Rule 23(b)(1), (2) or (3).  To satisfy Rule 23(a): (1) the class must be so numerous that joinder of all members is impractical (numerosity); (2) there must be questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and (4) the named plaintiffs must fairly and adequately protect the interests of the class (adequacy of representation, or simply adequacy).  In re Comty. Bank of N. Va. V….Loan Litig. 622 F. 3d 275, 291 (3d Cir. 2010) (quoting Fed. R. Civ. P. 23).  Plaintiffs seek certification under Rule 23(b)(3).  This rule requires that: (1) common questions of law or fact predominate (predominance), and (2) the class action is the superior method for adjudication (superiority). Id.  The Court must conduct a "rigorous analysis" of the arguments and evidence presented to decide if class certification is appropriate.  In re Lamictal Direct Purchaser Antitrust Litig., 957 F.3d 184, 190-91 (3d Cir. 2020).

The requirements of Rule 23 are met here. Starting with Rule 23(a), "[n]o minimum number of plaintiffs is required to maintain a suit as a class action but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first paragraph of Rule 23(a) has been met." Stewart v. Abraham, 275 F. 3d 220, 226-27(3d Cir. 2001).  Plaintiffs' class

of 1,523,970 members plainly meets the numerosity requirement.

Where, as here, the action proceeds under Rule 23(b)(3), the commonality requirement is subsumed by Rule 23(b)(3)'s predominance requirement. Danvers Motor Co. v. Ford Motor Co., 543 F.3d 141, 148 (3d Cir. 2008)(citing Georgine v. Amchem Prods., Inc., 83 F.3d 610, 626 (3d Cir. 1996) ("Because [Rule] 23(b)(3)'s predominance requirement incorporates the commonality requirement, [the court] will treat them together.")). Commonality does not require perfect identity of questions of law or fact among all class members. Reyes v. Netdeposit, LLC., 802 F.3d 469, 486 (3d Cir. 2015). Instead, the named plaintiffs must demonstrate that the class members have suffered the same injury and that their claims "depend upon a common contention … capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). The Rule 23(b)(3) predominance analysis measures whether the class is significantly cohesive to warrant class certification. Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc. 259 F. 3d 154, 187 (3d Cir. 2001)(citation omitted). The predominance requirement examines whether the defendant's conduct was common to the class members, and whether the class members were harmed by the defendant's conduct. Sullivan v. DB

Inves., Inc. 667 F. 3d 273, 298 (3d Cir. 2011).  In addition, the predominance inquiry "focuses [on] a common course of conduct by which the defendant may have injured class members."  Barel v. Bank of Am., 255 F.R.D. 393, 399 (E.D. Pa. 2009).

The commonality requirement is met here. Plaintiffs and the class each allege they received unwarranted telemarketing calls from FMC or its vendors.  Further, the focus of FMC's defense, that it did not use an ATDS, is common to the class.  Even if some of FMC's defenses are individualized, they do not predominate over the common defenses.  Other common issues of fact and law are whether FMC violated the TCPA, whether the violations were knowing or willful, and whether statutory damages are recoverable. Accordingly, the commonality and predominance requirements of Rules 23(a)(2) and 23(b)(3) are met.

Since the adequacy and typicality analysis under Rules 23(a)(3) and 23(a)(4) merge, they will be addressed together. Smith v. Merck & Co., Inc. C.A. No. 13-2970 (MAS/LG), 2019 U.S. Dist. LEXIS 120879, at *6 (D.N.J. July 7, 2019). Typicality involves an "inquiry whether the named [plaintiff's] individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." Hassine v. Jeffes, 846 F. 2d 169, 177 (3d Cir. 1988) (internal quotations and

citations omitted).  The typicality requirement is satisfied where there is a "strong similarity of legal theories or where the claim arises from the same practice or course of conduct."  In re NFL Players Concussion Injury Litig.("NFL"), 821 F. 3d 410, 428 (3d Cir. 2016) (citation omitted).  Here, the named plaintiffs' claims arise from the same practice and conduct of FMC that gives rise to the claims of the class members.  Plaintiffs and the class both allege they were subject to improper telemarketing calls.  Accordingly, the typicality requirement is met.  See Beck v. Maximus, Inc., 457 F.3d 291, 295-96 (3d Cir. 2006).  "Cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirements irrespective of the varying fact patterns underlying the individual claims." Stewart v. Abraham, 275 F.3d 220, 227 (3d Cir. 2001) (citation omitted).

Adequate representation depends on two factors: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975). Both requirements are met here. Class counsel have ably represented their clients, as has defense counsel, and the Declarations and C.V.'s filed with the Court establish counsel's qualifications and

experience. Further, the class plaintiffs, Somoygi and Sieleman, have ably fulfilled their roles as class plaintiffs. In addition, there is no evidence or argument that the class plaintiffs have interests antagonistic to the class. Thus, the class plaintiffs and class counsel are approved, and the adequacy requirement is met.

Since the Court has already found that the predominance requirement in Rule 23(b)(3) has been met, the Court will turn to the superiority requirement. In this regard, since the class will be certified for settlement purposes only, a showing of manageability at trial is not required. See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997). ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, ..., for the proposal is that there be no trial.").

In addition to the other requirements for class certification in Rule 23, the Third Circuit requires that a Rule 23(b)(3) class be "currently and readily ascertainable." Marcus v. BMW of N.Am., LLC, 687 F.3d 583, 593 (3d Cir. 2012). Plaintiffs must show that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the

class definition." <u>Byrd v. Aaron's Inc.</u>, 784 F.3d 154, 163 (3d Cir. 2015) (internal quotation marks and citation omitted).  Here the ascertainability requirement is met since the class consists of FMC customers who are readily identifiable from FMC's records.

## 2. <u>Fairness of Settlement</u>

Having ruled as to the final certification of the settlement class, the Court now turns to the fairness of the proposed settlement.  Where, like in this case, parties seek simultaneous class certification and settlement approval, courts must scrupulously examine the fairness of the settlement.  This is necessary to protect the interests of all class members.  <u>In re Google Inc. Cookie Placement Consumer Privacy Litig.</u>("Google"), 934 F. 3d 316, 322 (3d Cir. 2019) (citation and quotation omitted).

Rule 23 (e) (2) provides that Courts should grant final approval to class action settlements that are "fair, reasonable, and adequate."  To make this evaluation, the 2018 amendments to Rule 23 require courts to consider whether:

> (A)  The class representative and class counsel have adequately represented the class;
>
> (B)  The proposal was negotiated at arm's length;
>
> (C)  The relief provided for the class is adequate, taking into account:
>
> > (i)  The costs, risks, and delay of trial and appeal;

> > (ii)   The effectiveness of any proposed
> > method of distributing relief to the
> > class, including the method of
> > processing class-member claims;
> >
> > (iii)  The terms of any proposed award of
> > attorney's fees, including timing of
> > payment; and
> >
> > (iv)   Any agreement required to be
> > identified under Rule 23(e)(3); and
> >
> > (D)  The proposal treats class members equitably
> > relative to each other.

Id.

Subparagraphs (a) and (b) of Rule 23 address the "procedural fairness" of the settlement, while subparagraphs (c) and (d) address "substantive fairness." See Rule 23 (e)(2) Advisory Committee Notes to 2018 Amendments.  In addition, the Third Circuit has provided guidance on the factors a Court should consider to decide whether to approve a class action settlement. See Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975).  The Girsh factors (id. at 157)are:

> > (1)  the complexity, expense and likely duration
> > of the litigation;
> >
> > (2)  the reaction of the class to the settlement;
> >
> > (3)  the stage of the proceedings and the amount of
> > discovery completed;
> >
> > (4)  the risks of establishing liability;
> >
> > (5)  the risks of establishing damages;

(6)   the risks of maintaining the class action through trial;

(7)   the ability of the defendants to withstand a greater judgment;

(8)   the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9)   the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

These factors are merely a guide and the absence of one or more does not automatically render the settlement unfair.  In re Valeant Pharmaceuticals Int'l, Inc. Sec. Litig., C.A. No. 15-CV-07658 (MAS-LHG), 2020 WL 3166456, at *7 (D.N.J. June 15, 2020) (citation omitted).

Where applicable the permissive and non-exhaustive Prudential factors are also relevant to evaluating the parties' settlement. These factors are:

[T]he maturity of the underlying substantive issues…the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-- or likely to be achieved--for other claimants; (4) whether class or subclass members are accorded the right to opt out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure for processing individual claims under the settlement is fair and reasonable.

In re Prudential Ins. Co. Am Sales Practice Litig. Agent Actions 148 F.3d 283, 323 (3d Cir. 1998). In addition, the Court may consider, "the degree of direct benefit provided to the class, which may include "the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards." In re Baby Prod. Antitrust Litig., 708 F. 3d 163, 174 (3d Cir. 2013).

Generally, courts favor parties reaching an amicable agreement and avoiding lengthy litigation. See Google, 934 F.3d at 326. A district Court is required to assume a settlement is fair if "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." NFL, 821 F. 3d at 436. This presumption applies even when, as here, the settlement negotiations preceded the actual certification of the class. Beneli v. BCA Fin. Servs., 324 F.R.D. 89, 101 (D.N.J. 2018). Nevertheless, since the Court is a fiduciary for absent class members it must examine the proposed settlement with care. Ultimately, whether to approve a proposed settlement is left to the discretion of the District Court. Girsh, 521 F. 2d at 156.

The Court has no hesitation in finding that the parties' settlement is "fair, reasonable and adequate." As to the Rule 23(e)(2) factors, plaintiffs and class counsel admirably represented the class. The case was vigorously litigated and at all relevant times plaintiffs' counsel, as well as defense counsel, fully protected their clients' interests. Plaintiffs' counsel successfully opposed motions to dismiss and pursued the detailed fact investigation and discovery they needed to succeed at trial if necessary. The record also reflects the parties' settlement was arrived at after "arm's length" negotiations. The parties participated in three (3) mediation sessions with a retired United States Magistrate Judge and continued separate direct discussions to finalize the settlement. The Court also accepts plaintiff and defense counsel's assessment of the fairness of the settlement and their representation that the parties did not discuss payment of attorney's fees until they agreed on all essential settlement terms. See In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F.Supp.450, 543 (D.N.J. 1997) ("[T]he Court credits the judgment of Plaintiffs' counsel, all of whom are active, respected, and accomplished in this type of litigation.").

As to the Rule 23(e)(2)(C) factors, these are met. Regarding the "complexity, expense and likely duration" of the case, defendant has a colorable defense that the TCPA does not apply

here because it did not use an ATDS.  Further, the Supreme Court may soon rule on the ATDS dispute at issue which may bar any recovery for plaintiffs.  In addition, absent a settlement it is likely the class could not hope to recover any money for years. The COVID crises has slowed civil litigation to a crawl.  Further, even if plaintiffs are successful at trial, an appeal by defendant is likely.  In addition, even if plaintiffs' motion for class certification is successful, defendant could appeal pursuant to Rule 23(f) which would further delay the ultimate resolution of the case.  The fact that the settlement provides prompt relief to the class in a matter that was subject to substantial colorable class certification and liability defenses, weighs in favor of approving the settlement.

Rule 23(e)(2)(C)(ii) addresses the effectiveness of distributing relief to the class and the method of processing claims.  This factor also favors approving the settlement.  The parties hired an experienced and qualified claims administrator who fulfilled his duty to provide notice to the class as set forth in the Court's Preliminary Approval Order.  As required, the administrator also followed up to track down class members who originally could not be contacted and sent the required Notice a second time.  Heffler Decl. ¶¶ 8-11.  Further, the settlement did not impose an onerous burden on class members who elected to

receive a settlement payment.  They simply had to certify in a Proof Claim Form that they received one or more telemarketing calls or voicemails from FMC or its vendors to which the class member did not consent.  See Settlement Agreement §5.4.  Settlement Class Members could submit claim forms electronically via the Settlement website or by regular U.S. Mail.  Heffler Decl. ¶ 13.  Requiring a simple certification to receive a settlement payment is reasonable and appropriate.  In addition, given the administrator's performance to date, the Court foresees no problems processing the future payments to the class.  The Settlement Agreement requires FMC to fund the settlement twenty (20) days after the Effective Date which is reasonable and appropriate.  Settlement Agreement §2.1.

Having found that Rule 23(e)(2) is satisfied, the Court now turns to the Girsh factors.  An analysis of these factors also weighs in favor of approving the parties' settlement.  If the parties continue to litigate it is likely the litigation will continue for years.  While this fact standing alone is not dispositive, it certainly weighs in favor of settlement.  Even before the COVID crisis occurred the parties faced a long road ahead to resolve the case.  The COVID crisis adds to the delay in the case. If the case did not settle, additional discovery needed to be taken, Rule 23 class certification had to be decided, expert

reports had to be prepared, and <u>Daubert</u> and dispositive motions would undoubtedly have been filed, argued and decided. All this work would inevitably take years to complete. The delay to trial would be even longer if either side appealed the class certification decision. <u>See</u> Rule 23(f). The parties are better off with the certainty of a prompt settlement and payment rather than the uncertainty of whether they will get any recovery at some future unknown date. The Court agrees with plaintiffs that their settlement eliminates the risk of losing and "provides substantial, immediate and guaranteed monetary and remedial relief[.]". Brief at 24-25.

As to the reaction of the class to the settlement, this factor favors granting plaintiffs' motion. Although 1.5 million notices were served, there are no substantive objections to the settlement terms (Lederer Decl. ¶53), and only a relatively small number of opt-outs (24). Kaufman Decl. ¶¶12-13; <u>see</u> <u>In re Elec. Carbon Prods. Antitrust Litig.</u>, 447 F. Supp 2d 389, 406 (D.N.J. 2006) ("The absence of objections to a fee request, or the imposition of minimal objections, is seen as an indicator that the fee request is fair."); <u>Landsman & Funk, P.C. v. Skinder-Strauss Assocs.</u>, C.A. No. 08-CV-3610 (CLW), 2015 WL 2383358, at *5 (D.N.J. May 18, 2015), <u>aff'd</u>, 639 F. App.'x 880 (3d Cir. 2016) (approving TCPA class settlement and stating, "[t]he number of exclusions and objections

18

are thus exceptionally small in relation to the size of the potential and confirmed class.  Such a discrepancy weighs in favor of approval of the settlement."); Wal-Mart Stores, Inc. v Visa U.S.A., Inc., 396 F.3d 96, 119 (2d Cir. 2005) ("The favorable reaction of the overwhelming majority of class members to the settlement is perhaps the most significant factor in our…inquiry.").

An analysis of the stage of the proceedings and the amount of discovery completed also favors settlement.  The case was not settled until plaintiffs conducted sufficient investigation and discovery to evaluate the strength and weaknesses of their case. The parties engaged in significant motion practice that laid bare their legal theories.  In addition, plaintiffs' depositions and review of thousands of documents enabled them to assess defendants' exposure and their chances of success.[5]  As to the risk of establishing liability and damages, this factor also favors settlement.  Defendant has a colorable defense that it did not use an ATDS.  In this regard, nobody knows how the Supreme Court will rule when it addresses the definition of an ATDS.  It is possible the decision may bar plaintiffs' claim in its entirety.  As to the risks of maintaining the class action through trial, no one knows

---

[5] In NFL, the Third Circuit found this factor was satisfied even though no formal discovery was taken.  821 F. 3d at 438-39.

for certain.  However, this factor is essentially "toothless" in a class settlement because there will be no trial.  NFL, 821 F. 3d at 440.  Thus, this factor deserves "minimal consideration."  Id.[6]

As mentioned, it is noteworthy that the Supreme Court granted certiorari in Facebook, Inc. v. Duguid, No. 19-511 (S.Ct.). Facebook followed from the Ninth Circuit's decision in Marks v. Crunch San Diego, LLC, 904 F. 3d 1041, 1052 (9th Cir. 2018) (holding that the statutory definition of an ATDS is not limited to devices with the capacity to call numbers produced by a random or sequential number generation, but also includes devices with the capacity to dial stored numbers automatically.).  The case is significant since it is poised to resolve a Circuit split on what constitutes an ATDS under the definition set forth in the TCPA. Due to the uncertainty regarding how the Supreme Court will rule, it is possible the decision may foreclose plaintiffs' claim.  This uncertainty weighs in favor of settling, especially where the payment to each class member is more than de minimis.

The Girsh factors require the Court to examine whether the defendant could withstand a greater judgment.  Since the settlement did not take into consideration the defendant's ability to pay,

---

[6] Other defenses FMC asserted included that its calls were informational and noncommercial and did` not constitute telemarketing under the TCPA, that it had consent to call its own client borrowers, and that any calls fell within the established business relationship provision of the TCPA.

the Court will not examine this factor in detail.  Further, the fact that a defendant may be able to pay more to settle does not undermine the reasonableness of the existing settlement.  <u>Sullivan v. DB Invest., Inc.,</u> 667 F. 3d 273, 323 (3d Cir. 2011)(en banc).  Further, "a defendant's ability to withstand a much higher payment does not necessarily mean that it's obligated to pay any more than what the [class members] are entitled to under the theories of liability that existed at the time the settlement was reached."  <u>In re Warfarin Sodium Antitrust Litig.,</u> 391 F. 3d 516, 538 (3d Cir. 2004).

The last <u>Girsh</u> factors to consider are the range of reasonableness of the fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of the alternate risks of litigation.  Although the parties originally estimated each participating class member would receive $37.61, the present estimate is $75.30.  Insofar as TCPA cases are concerned, this payment is within the range of other settlements that have been approved and in fact is on the high side.  <u>See</u> <u>e.g.,</u>  <u>Hashn v. Dep't. Stores Nat. Bank,</u> 182 F. Supp. 3d 935, 944 (D. Minn, 2016) ($33.20); <u>Estrada v. Yogi, Inc.,</u> C.A. No. 13-1989, 2015 WL 589542, at *7 (E.D. Cal. Oct. 6, 2015) ($40.00); <u>In re Capital One Tel. Consumer Prot. Act. Litig.,</u> 80 F. Supp 3d 781, 790 (N.D.I11. 2015) ($34.60).

The reasonableness of the settlement is bolstered by the fact that FMC agreed to remedial relief designed to end improper telemarketing practices. As attested to by Associate Professor Jacob H. Russell, plaintiffs' consultant, this relief is not pro forma. Russell specializes in corporate governance, compliance and consumer protection. See generally Russell Decl. Russell attested to the fact that the agreed to remedial relief, "provides meaningful relief to the settlement class and is closely calibrated to its intended goal of reducing the likelihood of TCPA violations in the future." Russell Decl. ¶12. According to Russell, the benefits to the class are "substantial" (¶21), "will reduce the likelihood of future unsolicited or unauthorized calls" (¶22), and "provides a novel additional benefit to plaintiffs when compared to other TCPA cases." (¶26). Russell concludes that the required corporate compliance relief, "provides a significant benefit to class members, as well as to individuals outside the class, and is thus a material and valuable supplement to the monetary component of the settlement." (¶31). Russell's opinions are informative.

The Court also finds that a consideration of the Prudential factors favors settlement. The Court has already examined the ability of the parties to evaluate each other's liability position and the likelihood of success. The Court has also compared the recovery in this case to other TCPA settlements. In addition, the

Court has found that the notice given to the class was the most
practical means that satisfies due process.  In addition, the
claims process is straightforward and reasonable.  To recover money
a class member was simply required to submit a certification that
the claimant was called.  The method of apportioning the settlement
sum to be paid to each class member is also reasonable and
appropriate.  The administrative benefits of a <u>pro</u> <u>rata</u>
distribution outweighs the headaches, delay, inefficiencies, and
difficulties that would result from requiring that the payment to
each class member be calculated based on how many calls each
claimant received, when, the length of the calls, etc.

In order to evaluate the adequacy of the settlement the Court
asked the parties to address the recent decision in <u>Ward v.</u>
<u>Flagship Credit Acceptance LLC.</u>, C.A. No. 17-2069, 2020 WL 759389
(E.D.Pa. Feb. 13, 2020).  In <u>Ward</u>, the Court denied the plaintiff's
motion for final approval of a TCPA class action settlement.
However, <u>Ward</u> is distinguishable.  In <u>Ward,</u> the Court was concerned
about the fact the case settled before plaintiffs had a full
understanding of the merits.  <u>Id</u>. at *13.  In fact, the case
settled before an answer or Rule 12 motion was filed.  This is not
the case here because here the case did not settle until the
parties engaged in fulsome motion practice and discovery.  The
Court in <u>Ward</u> was "not convinced that counsel could fully assess

23

the fairness of the settlement given the early posture during which the parties reached agreement." <u>Id</u> at *14.  Again, for the reasons discussed this is not the case here.

Just as important, the Court in <u>Ward</u> was concerned about whether the defendant could pay more to settle. Although during settlement discussion the defendant raised its ability to pay a substantial settlement sum, the Court was concerned the class could not verify that $4 million was all the defendant could afford to pay.  <u>Id</u>. at *16.  Also, defendant's claim that it did not have insurance was not appropriately investigated.  Unlike <u>Ward</u>, FMC's ability to pay did not factor into the agreed upon settlement sum.

In addition, in <u>Ward</u> the Court was concerned that a $35.30 payment to each class member was <u>de minimis</u>.  <u>Id</u>. at *19.  Here, the Court does not consider $75.30 to be <u>de minimis</u>.  While this sum may not be a "king's ransom," it certainly is nothing to scoff at since 49,000 people will be getting a check for $75.30 that they otherwise would not receive.  This is better than the nothing they would have received unless plaintiffs filed, litigated and settled the case. The Court is mindful of the fact that the settlement affords benefits to the class who, absent a settlement, may not have been aware of their legal rights or had too little incentive to pursue an individual suit. A survey of the TCPA settlements around the country reveals that although there are

24

higher per claimant recoveries, most TCPA settlements are for a lower amount. See Ward at *23 (citing cases); See also Plaintiffs' Brief at 14 (citing cases).

The Court is mindful that it is not able to conclude that plaintiffs squeezed the last available dollar out of FMC. However, this is not required in order to approve a class settlement. See Baby Products, 708 F. 3d at 174-75 ("[t]he role of a district court is not to determine whether the settlement is the fairest possible resolution[.]"; Henderson v. Volvo Cars of N.Am., LLC., C.A. No. 09-4146 (CCC), 2013 WL 1192479, at *11 (D.N.J. March 22, 2013) (citing cases) ("[T]o withhold approval of a settlement of this size because [Volvo] could withstand a greater payment would make little sense where the [settlement] is within the range of reasonableness and provides substantial benefits to the Class."). The bottom line is that the Court concludes that the parties' settlement is within the reasonable range of TCPA settlements and is fair, reasonable and adequate when considered from the perspective of the class as a whole. This is what is required in order to approve the parties' settlement. See generally In re AT&T Corp. Sec. Litig., 455 F. 3d 160 (3d Cir. 2006); see also Ins. Brokerage Antitrust Litig., 579 F. 3d at 259 (a settlement that would eliminate delay and expenses and provides immediate benefit to the class strongly favors approval).

The recent decision in Johnson v. NPAS Solutions, LLC.. _____

F.3d _____, 2020 WL 5553312 (11th Cir. Sept. 17, 2020), also

deserves mention.   In Johnson the court ruled that an incentive

payment to the class representative was improper.   As to this

holding, the Court respectfully declines to follow Johnson.   There

is substantial precedent from this Circuit supporting approval of

incentive payments.   See Varacallo v. Mass. Mut. Life Ins. Co.,

226 F.R.D. 207, 257-58 (D.N.J. 2005) ("The Court finds ample

authority in this and other circuits for the approval of incentive

funds."); see also Landsman & Funk, P.C., supra (affirming lower

Court's class action settlement that included an incentive award

to the class plaintiff); Talone v. The American Osteopathic Assoc.,

C.A. No. 16-CV-04644-NLH-JS, 2018 WL 6318371, at *17 (D.N.J. Dec.

3, 2018) ("Courts may grant incentive awards in class action cases

to particular members of the class.") (citation and quotation

omitted); Smith v. Prof. Billing & Management Services, Inc., C.A.

No. 06-4453(JEI), 2007 WL 4191749, at *3 (D.N.J. Nov. 21, 2007)

("Substantial authority exists for the payment of an incentive

award to the named plaintiff.").   Until and unless the Supreme

Court or Third Circuit bars incentive awards or payments to class

plaintiffs, they will be approved by this Court if appropriate

under the circumstances.   Here the incentive payments to the class

plaintiffs is appropriate given their substantial contribution to

the successful settlement of the case.

Regarding attorney's fees, the Court will enter a separate Opinion justifying counsel's award.  Counsel deserves to be fairly compensated for their years of hard work.[7]  Nevertheless, the Court's Order provides that counsel's attorney's fees may not be paid earlier than the payments to the class.

CONCLUSION

Accordingly, for all the foregoing reasons, plaintiffs' "Motion for Final Approval of Class Action Settlement" is granted.[8]

s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: October 20, 2020

---

[7] To be clear, the Court's Preliminary Approval Order approved the form and manner of notice to the class.  Doc. No. 96.  Kaufman's Declarations attest to the fact that all required notice requirements were satisfied.  Doc. Nos. 101-13, 106-1.

[8] This Amended Opinion corrects an inadvertent misstatement in the initial Opinion.