[Docket No. 116]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

JOSHUA SOMOGYI, KELLY WHYLE SOMOGYI and STEWART SIELEMAN, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

FREEDOM MORTGAGE CORP.,

    Defendant.

Civil No. 17-06546 (RMB/MJS)

**MEMORANDUM ORDER**

**RENÉE MARIE BUMB, Chief United States District Judge:**

Plaintiffs Joshua Somogyi, Kelly Whyle Somogyi, and Stewart Sieleman (collectively, Plaintiffs) ask the Court to grant their motion for a *cy pres* distribution of remaining settlement funds to the Public Justice Foundation (Docket No. 116). Defendant Freedom Mortgage Corp. (Freedom) does not oppose the motion. The Court agrees with Plaintiffs that a *cy pres* distribution is appropriate and that the Public Justice Foundation is an appropriate *cy pres* recipient, and therefore, **GRANTS** Plaintiffs' motion.

    **I.**    **BACKGROUND**

Plaintiffs filed this class action lawsuit in 2017 alleging Freedom violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, by making unsolicited phone calls to consumers on both residential and cellular phones beginning in 2013. [*See generally* Compl. (Docket No. 1).] Following vigorous litigation and extensive discovery, the parties agreed to settle the matter, and the Court approved a class-wide settlement. *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 344, 354 (D.N.J. 2020). Under the parties'

settlement agreement, Freedom would deposit $9.5 million into a non-reversionary bank account maintained by escrow agents, Kroll and Berger Montague PC. *Id.* at 345. From that sum, the court-appointed settlement administrator, Kroll Settlement Administration LLC (f/k/a Heffler Claims Group or Heffler Claims Administration, LLC) (Kroll), would distribute the money as follows:

- $3 million for Plaintiffs' attorneys' fees;
- $61,198.75 for incurred litigation expenses;
- $15,000 to Plaintiffs for service awards ($5,000 each); and
- $450,000 to Kroll for notice and settlement administration costs.

*Id.* Kroll would then distribute the remaining funds *pro rata* to each class member. *Id.*; *see also* Declaration of Scott M. Fenwick (Fenwick Decl.) ¶ 4 (Docket No. 116-3).

Kroll made the distributions required by the settlement agreement, issuing about 80,000 settlement checks to the class members. [Fenwick Decl. ¶ 5.] The checks were only valid for 120 days. [*Id.*] Of the 80,000 checks mailed, Kroll received back about 500 checks because they were undeliverable. [*Id.* ¶ 6.] After obtaining updated address information for the returned checks, Kroll issued about 330 new checks. [*Id.*] After the check void period expired, Kroll learned that about 3,300 checks remained uncashed. [*Id.* ¶ 7.] Kroll obtained updated address information for the recipients of those 3,300 checks, and issued another round of settlement checks. [*Id.* ¶¶ 8-12.] Despite Kroll's best efforts, about 990 checks totaling about $74,800.00 remain uncashed. [*Id.* ¶ 13.] To date, Kroll has distributed the settlement funds as follows:

| | |
|---|---|
| Settlement Fund | $9,500,000.00 |
| Attorneys' Fees | ($3,000,000.00) |
| Litigation Expenses | ($61,198.75) |
| Named Plaintiffs' Service Awards | ($15,000.00) |
| Notice & Administration Costs | ($450,000.00) |
| 79,214 Issued Checks | ($5,972,735.60) |
| 992 Voided Checks | $74,796.80 |
| Remaining Balance | $75,862.45 |

[*Id.* at 16.]

Under the Court approved settlement agreement, the parties agreed that after a distribution (or redistribution), any remaining settlement funds should be distributed on a *cy pres* basis if it is not cost effective or administratively efficient to redistribute the remaining funds to the authorized claimants. [Stipulation and Agreement of Settlement ¶ 4.6 (Docket No. 89-4).] The parties also agreed that Kroll has the discretion to decide whether a further distribution would be cost and administratively efficient. [*Id.*]

Kroll estimates a second distribution of the remaining settlement funds would cost about $50,000 with each class member receiving a "*de minimis* amount of approximately $0.33 each." [Fenwick Decl. ¶ 15.] According to Kroll, a second distribution will be both cost and administratively ineffective. [*Id.*] As such, Kroll asserts a *cy pres* distribution of the remaining funds is appropriate. [*Id.*] And Plaintiffs ask this Court to name the Public Justice Foundation

3

as the *cy pres* recipient. [Pls' Mem. of Law in Support of their Mot. for Approval of Cy Pres Distribution (Pls. Br.) 8-13 (Docket No. 116-2).]

## II. DISCUSSION

Even after a class action litigation settles, unclaimed settlement funds sometimes remain. In the Third Circuit, courts have generally three options to address remaining settlement funds: (1) revert the funds back to the defendant; (2) escheat the funds to the state; or (3) a *cy pres* distribution. *In re Baby Products Antitrust Litigation*, 708 F.3d 163, 172 (3d Cir. 2013). A *cy pres* distribution is the preferred method because it preserves a class action litigation's deterrent effect against the defendant and serves (though indirectly) the class members' interests. *Id.*

A *cy pres* distribution is appropriate after "all known parties are compensated and the fees and costs are paid." *Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 321, 341 (E.D. Pa. 2021). *Cy pres* distributions are "most appropriate where further individual distributions are economically infeasible." *In re Baby Products Antitrust Litigation*, 708 F.3d at 173; *see, e.g.*, *Vasco v. Power Home Remodeling Grp., LLC*, 2016 WL 5930876, at *10 (E.D. Pa. Oct. 12, 2016) (finding *cy pres* distribution provision in settlement agreement fair because "uncashed checks and unused administrative costs" are likely "*de minimis*"). "Courts generally 'have approved charitable donations to organizations geared toward combating harms similar to those that . . . injured the class members.'" *Gates v. Rohm & Haas Co.*, 2011 WL 1103683, at *2 (E.D. Pa. Mar. 24, 2011) (quoting *In re Linderboard Antitrust Litig.,* 2008 WL 4542669, at *3 (E.D. Pa. Oct. 3, 2008)); *see also Sourovelis*, 515 F. Supp. 3d at 341 (explaining "courts may permit 'the parties to distribute to a nonparty (or nonparties) the excess settlement funds for their next best use--a charitable purpose reasonably approximating the interests pursued by the class'"

4

(quoting *In re Baby Products Antitrust Litigation*, 708 F.3d at 169)). In doing so, courts may consider: "(1) the objectives of the underlying statute(s), (2) the nature of the underlying suit, (3) the interests of the class members, and (4) the geographic scope of the case." *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 362 F. Supp. 2d 574, 576 (E.D. Pa. 2005) (citing *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F. 3d 679, 682 (8th Cir. 2002)).

Starting with the class members' interests, the Court is satisfied a second distribution would only result in a minimal direct benefit to them. Indeed, if Kroll must undergo a second distribution for the unclaimed checks, each class member would only receive about thirty-three cents after administrative costs. [Fenwick Decl. ¶ 15.] This is a minuscule amount not worth the expense of another direct distribution to the class members. *Schwartz*, 362 F. Supp. 2d at 577 (finding payment of excess settlement funds where each member would receive about $3.50 after administrative expenses to be "impractical"); *see also Maxin v. RHG Co.*, 2019 WL 4295325, at *2 (S.D. Cal. June 24, 2019) (finding second distribution that would net each class member $1.89 to be a *de minimis* direct recovery, and thus allowing *cy pres* distribution to charitable organizations); *cf. Vasco*, 2016 WL 5930876, at *8 (finding *cy pres* provision in class action settlement agreement fair because a second distribution with each class member receiving an extra $2.00 "not worth the expense" of the distribution). Thus, a *cy pres* distribution is appropriate.

Turning to the nature of this suit and the statutory objectives, Plaintiffs brought this class action claiming Freedom violated the TCPA by making unsolicited phone calls. Congress enacted the TCPA to "protect individual consumers from receiving intrusive and unwanted calls." *Daubert v. NRA Grp., Inc.*, 861 F.3d 382, 389 (3d Cir. 2017) (citing *Gager v. Dell Fin. Servs.*, 727 F.3d 265, 268 (3d Cir. 2013)). Construed broadly, the TCPA "aims to

5

mitigate 'the nuisance and invasion of privacy' that unsolicited telecommunications cause." *Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d 551, 562 (E.D. Pa. 2019) (quoting *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 326 (3d Cir. 2015)).

Given the TCPA's objectives and the nature of this class action, the Court finds the Public Justice Foundation is an appropriate *cy pres* recipient because the organization's interests align with the class members' interests here. The Public Justice Foundation is a nonprofit charitable organization "dedicated to advancing the public interest," and together with Public Justice, P.C. (a national public interest law firm), have "been at the forefront of efforts to protect consumers from infringement upon privacy rights, including violations of the TCPA." [Decl. of F. Paul Bland, Jr. (Bland Decl.) ¶¶ 1, 11 (Docket No. 116-4).] Indeed, the Foundation has taken active roles in lawsuits against TCPA violators, like serving as appellant counsel or filing amicus curiae briefs in other lawsuits involving the TCPA. *See, e.g., Lindenbaum v. Realgy*, LLC, 13 F.4th 524 (6th Cir. 2021); *Chen v. Allstate Ins.*, 819 F.3d 1136 (9th Cir. 2016); *see also* Bland Decl. ¶ 13 (reviewing TCPA cases involving the Public Justice Foundation). Besides litigating TCPA matters, the Foundation engages in educational campaigns to protect consumers from TCPA violators by providing information to consumers, legal aid lawyers, and other public interest advocates, as well as participating in educational seminars. [Bland Decl. ¶ 14.] On top of those efforts, the Public Justice Foundation also advocates before lawmakers to enhance consumer protection laws like the TCPA. [*Id.* ¶ 16.] Several courts have found the Public Justice Foundation to be an appropriate *cy pres* recipient for unclaimed settlement funds in consumer protection matters, including TCPA class action litigations. *Krakauer v. Dish Network, LLC*, 2023 WL 6626112, at *3-5 (M.D.N.C. Oct. 11, 2023); *Couser v. Comenity Bank*, 2017 WL 2312080, at *3 (S.D.

Cal. May 26, 2017); *see also Dashnaw v. New Balance Athletics, Inc.*, 2019 WL 3413444, at *12, 14 (S.D. Cal. July 29, 2019); *Maxin*, 2019 WL 4295325, at *3.

Because of the Public Justice Foundation's particular focus on protecting consumers, enforcing the TCPA, and assisting those who experienced TCPA violations, the Court finds the Public Justice Foundation will use the remaining settlement funds to combat the harm caused by TCPA violators like the harm the class members alleged here. Thus, the Court finds a *cy pres* distribution to the Public Justice Foundation serves the class members' interests and advances the TCPA's objectives.

### III.  CONCLUSION

For the above reasons, and for good cause shown,

IT IS on this **22nd** day of **November 2023**, hereby:

**ORDERED** that Plaintiffs' Unopposed Motion for Approval of a *Cy Pres* Distribution is **GRANTED** (Docket No. 116); and it is further

**ORDERED** that all unclaimed residual monies remaining in the Net Settlement Fund will be distributed by Settlement Administrator, Kroll Settlement Administration LLC, to *cy pres* recipient the Public Justice Foundation.

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
Chief United States District Judge